IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



**FILED**

**JUL 2 8 2017**

Clerk, U S  District Court
District Of Montana
Missoula

|  |  |
|---|---|
| AMERICAN TRUCKING AND TRANSPORTATION INSURANCE COMPANY, a Risk Retention Group,<br><br>Plaintiff,<br><br>vs.<br><br>RALPH NELSON, ROBERT GORMAN, SR., BOBBY J. GORMAN, DAN DOOLEY, and WESTCHESTER SURPLUS LINES INSURANCE COMPANY<br><br>Defendants. | CV 16–160–M–DLC<br><br>ORDER |

Before the Court is the Defendant Dan Dooley's ("Dooley") motion to dismiss. Dooley argues that the claims against him should be dismissed because: (1) he is not subject to personal jurisdiction in the state of Montana; (2) Plaintiff's claim for breach of contract fails as a matter of law; (3) Plaintiff's claim for breach of fiduciary duty fails as a matter of law; (4) Plaintiff fails to state a claim against Dooley for fraud, negligent representation or constructive fraud; (5) Plaintiff fails to state a claim against Dooley for negligence; (6) Plaintiff's claim against Dooley for negligence *per se* fails as a matter of law; (7) Plaintiff fails to state a claim

-1-

against Dooley for acts in concert or civil conspiracy; and finally, (8) Plaintiff fails to state a claim against Dooley for piercing the corporate veil. For the reasons below, the Court grants the motion in part and denies the motion in part.

## BACKGROUND

"On a motion to dismiss, material allegations of the complaint are taken as admitted, and the complaint is to be liberally construed in favor of the plaintiff." *Kennedy v. H & M Landing, Inc.*, 529 F.2d 987, 989 (9th Cir. 1976).

Plaintiff American Trucking and Transportation Insurance Company ("ATTIC") is a risk retention group located in Missoula, Montana. ATTIC offers its member insureds certain benefits which are not generally available to insureds purchasing insurance on the open market. In exchange for these benefits, the member insureds are subject to heightened duties to ATTIC and the other member insured shareholders. Gorman Group is a transportation, shipping, and logistics company, and was the holding company for a number of subsidiaries, including Tango Transport. Tango Transport was the principal operating entity for Gorman Group's trucking operations. In 2010, Gorman Group became a shareholder of ATTIC and both Gorman Group and Tango Transport became ATTIC insureds (hereafter collectively referred to as "the Insureds"). As shareholders, the Insureds nominated Ralph Nelson, Gorman Group's Senior Vice President and General

Counsel, to be their representative to the ATTIC Board of Directors, and ATTIC required that at least one board meeting be held in the State of Montana.

On October 1, 2010, ATTIC issued policy number ATTTAN110 which provided coverage to the Insureds and other affiliated companies. The policy provided the insureds with commercial trucking, property, and personal injury liability coverage with a $5 million per occurrence policy limit subject to a $350,000 per occurrence deductible. Tango Transport managed all obligations to ATTIC on behalf of itself and Gorman Group. Tango Transport made all premium payments, paid claims, paid defense costs on the claims it handled, and reimbursed ATTIC on the claims it paid.

ATTIC provided coverage and issued annual policies to the Insureds in 2010, 2011, 2012, 2013, and 2014. From October 1, 2010, through September 30, 2015, Ralph Nelson, acting as the Insureds' claims handling manager, handled the intake, investigation, and resolution of claims in which the Insureds anticipated ultimate exposure would fall below $175,000. The Complaint alleges that Robert Gorman, Sr., as well as Dan Dooley, as the restructuring agent of Tango Transport, were advised and aware of the status of the claims handling process.

In 2014, Tango Transport began experiencing financial difficulties. However, Ralph Nelson informed ATTIC that the Insureds were refinancing their

debt obligations.  By September 2015, the Insureds were unable to meet their financial obligations to ATTIC.  At this time, Dan Dooley advised ATTIC that Tango Transport was either going to sell its operating equipment or would cease operations.

ATTIC immediately took over all open liability claims that were within Tango Transport's deductible under the policies issued by ATTIC, and all other open but unpaid claims.  ATTIC alleges that once it took over the claims, it became clear that the Insureds failed to satisfy their obligations under the ATTIC Shareholders Agreement and Bylaws, had misrepresented their liabilities, and were negligent in the manner in which they had handled the claims.

On September 20, 2015, ATTIC and the Insureds agreed to extend the policy for 45 days to allow the Insureds time to transfer their operating equipment to another purchasing entity, Celadon, Inc.  The Insureds paid a flat rate for coverage, and also transferred funds to ATTIC to pay for unpaid claims.  By October 2015, the Insureds had informed ATTIC and their creditors that they planned to liquidate their remaining assets.  In April 2016, Tango Transport filed for Chapter 11 Bankruptcy.

As of December 1, 2016, ATTIC had filed two unsecured claims in the consolidated bankruptcy case filed in the Federal Bankruptcy Court, Easter

District of Texas, Dallas, *In re Tango Transport, LCL, et al.* On December 21,

2016, the bankruptcy court determined that ATTIC may proceed against the non-

debtors for civil damages.

ATTIC's Complaint alleges ten counts against Dooley: (I) breach of

contract; (II) breach of fiduciary duty; (III) negligent misrepresentation; (IV)

fraud; (V) constructive fraud; (VI) negligence; (VII) negligence *per se*; (VII) acts

in concert; (IX) civil conspiracy; and (X) piercing the corporate veil.

Dan Dooley's motion to dismiss is personal to him as a Defendant and is

made pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).  The

Court addresses each issue raised by Dooley separately below.

## LEGAL STANDARD

A defendant may move, prior to trial, to dismiss a complaint for lack of

personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

> The power of a federal court entertaining a case based on diversity of
> citizenship to exercise personal jurisdiction over a nonresident defendant
> turns on two independent considerations: whether an applicable state rule or
> statute potentially confers personal jurisdiction over the defendant and
> whether assertion of such jurisdiction accords with constitutional principles
> of due process.

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th Cir.1977)

(citations omitted).  The party invoking jurisdiction of a federal court has the

burden of establishing jurisdiction. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278 (1936). It is the plaintiff's burden to demonstrate facts supporting a finding of jurisdiction to avoid a motion to dismiss. *Data Disc*, 557 F.2d at 1285. "[T]he plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir.2010) (citation and quotation omitted). On considering a motion to dismiss for lack of personal jurisdiction, uncontested allegations in the complaint must be read as true and disputes of fact are resolved in favor of the plaintiff. *Id.*

Under Montana law, courts follow a two-step test to determine whether personal jurisdiction exists. *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17 (Mont. 2015). Courts first determine whether jurisdiction exists under Montana's long-arm statute, Montana Rule of Civil Procedure 4(b)(1). *Id.* If personal jurisdiction exists under that first step, courts then consider "whether the exercise of personal jurisdiction conforms with the traditional notions of fair play and substantial justice embodied in the due process clause." *Id.*

Rule 12(b)(6) motions test the legal sufficiency of a pleading. Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is

-6-

entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the court can draw a "reasonable inference" from the facts alleged that the defendant is liable for the misconduct alleged. *Id.*

## ANALYSIS

## I.    Personal Jurisdiction

Montana Rule of Civil Procedure 4(b)(1) incorporates principles of general and specific personal jurisdiction. *Simmons Oil Corp. v. Holly Corp.*, 796 P.2d 189, 194 (Mont. 1990). The first sentence of the rule expresses the principle of general personal jurisdiction by inquiring as to whether a party is "found within" Montana. *Id.* A party is found within Montana if it is physically present in the state or if its contacts with the state are "so pervasive that it . . . may be deemed to be physically present." *Id.* A nonresident defendant must maintain "substantial" or "continuous and systematic" contacts with Montana to be found within the state. *Id.*

This Court does not have general jurisdiction over Dooley because he was never present in Montana, nor did he have continuous and systematic contacts

with Montana sufficient to be found within the state.  ATTIC alleges that Dooley

made calls to, sent letters to, and emailed ATTIC in Montana during the Tango

Transport restructuring process.  However, this is not enough to be considered

"found" within Montana because it occurred within a limited time period during

the restructuring process and, thus, was not continuous and systematic.  Moreover,

ATTIC effectively concedes that general jurisdiction over Dooley does not exist,

because it did not present any counter arguments in regards to general jurisdiction

in its response brief.[1]  (*See* Doc. 15 at 10–14.)

A claim for relief may also arise from any of the acts listed in Rule

4(b)(1)(A–G) and create specific jurisdiction for the purpose of litigating that

particular claim.  *Milky Whey, Inc.*, 342 P.3d at 17.  Thus, absent general personal

jurisdiction, courts in Montana may exercise specific jurisdiction over any person

> as to any claim for relief arising from the doing personally, or through
> an employee or agent, of any of the following acts:
>
> (A) the transaction of any business within Montana;
>
> (B) the commission of any act resulting in accrual within Montana of
> a tort action;
>
> (C) the ownership, use, or possession of any property, or of any
> interest therein, situated within Montana;

---

[1] During the July 25, 2017 hearing on the motion to dismiss, ATTIC's counsel
also conceded that general personal jurisdiction does not exist.

(D) contracting to insure any person, property, or risk located within Montana at the time of contracting;

(E) entering into a contract for services to be rendered or for materials to be furnished in Montana by such person;

(F) acting as director, manager, trustee, or other officer of a corporation organized under the laws of, or having its principal place of business within, Montana; or

(G) acting as personal representative of any estate within Montana.

Mont. R. Civ. P. 4(b)(1).

Rule 4(b)(1)(A) allows for the exercise of jurisdiction over any person who transacts business in Montana. A defendant's interactions must be "substantial" and "occur within Montana," however, "[e]xtensive interstate communications . . . do not give rise to jurisdiction where the contract is to be performed in another state." *Milky Whey*, 342 P.3d at 19 (citations omitted); *Cimmaron Corp. v. Smith*, 67 P.3d 258, 261 (Mont. 2003). Rule 4(b)(1)(B) allows the exercise of jurisdiction over anyone who commits an act that results in the accrual of a tort action within Montana based "on where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries." *Tackett v. Duncan*, 334 P.3d 920, 92 (Mont. 2014). Finally, Rule 4(b)(1)(D) allows the exercise of jurisdiction over anyone who enters into a "risk located within [Montana] at the time of contracting." *Carter v. Mississippi Farm Bureau*

*Cas. Ins. Co.*, 109 P.3d 735, 744 (Mont. 2005).

Further, in the Ninth Circuit, tort cases and contract cases are treated differently. "In tort cases, [the court] typically inquire[s] whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (citations omitted). In a tort case, "express aiming" is satisfied through three requirements: "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* "By contrast, in contract cases, [the court] typically inquire[s] whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummate[s][a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Id.*

Here, ATTIC alleges both tort and contract claims. Regarding the contract claims, Dooley was never a party to a contract with ATTIC, never consummated a transaction personally with ATTIC in Montana, nor did he ship or deliver tangible goods to Montana. Consequently, there is no specific personal jurisdiction over Dooley under the contract claims alleged by ATTIC.

However, this Court does have specific personal jurisdiction over Dooley under the remaining tort claims. Dooley directed his conduct as the restructuring agent of Gorman Group and Tango Transport directly to ATTIC, and at all times during the restructuring process ATTIC was domiciled in Montana with its principal place of business in Missoula, Montana. (Doc. 1 at 2, 7.) The Complaint alleges that Dooley would have been advised of the status of the claims handling process for ATTIC, and that he personally communicated to ATTIC that Tango Transport would be selling its operating equipment. (Doc. 1 at 38, 43.) In *Forsythe v. Overmyer*, the Ninth Circuit found that "[a]n out-of-state act having an effect within the state may be sufficient to support jurisdiction" and especially in instances where a corporate employee "could have remained behind multiple veils of his complex business organization" but chose not to do so. 576 F.2d 779, 783–784 (9th Cir. 1978). Here, although Dooley contends he never set foot in Montana, Dooley personally participated in the restructuring process and worked with ATTIC in the attempt to avoid liquidation of Tango Transport.[2]

---

[2] ATTIC contends in its response brief that Dooley made calls and sent letters and emails to ATTIC in Montana. (Doc. 15 at 12.) This allegation is not set forth in the Complaint. However, the Complaint does allege that Dooley had contacts with ATTIC. (Doc. 1 at ¶ 43.) At the hearing on this motion, the Court questioned the parties about Dooley's correspondence with ATTIC in Montana and their supporting affidavits from Dan Dooley and Ken Crippen. (Docs. 5-1 at 2; 15-1 at 2–3.) Dooley's counsel conceded that Dooley made calls and sent emails to ATTIC during the restructuring process. Thus, there is no dispute that Dooley sent numerous emails and made phone calls to ATTIC in Montana.

Further, Montana is the only forum where ATTIC alleges harm was suffered. *See Calder v. Jones*, 465 U.S. 783, 789 (1984) (finding that California was "the focal point both of the store and of the harm suffered" and that jurisdiction is proper in California based on the "effects" of the defendant's conduct in California.). Although under Montana law extensive interstate communications do not give rise to jurisdiction where the contract is to be performed in another state, here the insurance contract between ATTIC and the Insureds was performed in Montana. The Complaint adequately alleges that Dooley was aware that the harm suffered by ATTIC would be felt in Montana. Dooley's contacts with ATTIC establish that he personally availed himself of the privilege of conducting activities in Montana. Dooley was certainly aware that ATTIC was located in Montana and should have reasonably anticipated that he could be haled into court in Montana.

Finally, since ATTIC has made a prima facie showing that the exercise of personal jurisdiction over Dooley is constitutional, Dooley must respond with a "compelling case" that doing so would be unreasonable and therefore in violation of due process. "In determining whether the exercise of jurisdiction comports with 'fair play and substantial justice' and is therefore reasonable, [the court] consider[s] seven factors:

-12-

(1)     the extent of the defendants' purposeful injection into the forum
        state's affairs;

(2)     the burden on the defendant of defending in the forum;

(3)     the extent of the conflict with the sovereignty of the defendant's state;

(4)     the forum state's interest in adjudicating the dispute;

(5)     the most efficient judicial resolution of the controversy;

(6)     the importance of the forum to the plaintiff's interest in convenient
        and effective relief; and

(7)     the existence of an alternative forum."

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011).

Dooley does not address these factors in his briefing. Thus, the Court concludes

that Montana is the appropriate forum that comports with fair play and substantial

justice. Although it may be burdensome for Dooley as a resident of Illinois to

defend himself in Montana, the extent of the Defendant's alleged conduct was

directed to ATTIC in Montana. Montana has the greater interest in adjudicating

the dispute since the harm suffered to ATTIC occurred in this state and because

ATTIC is domiciled here. There exists no alternate forum that would have more

interest in the dispute. This Court is already familiar with the issues in this case,

and adjudicating the case in Montana will provide ATTIC with convenient and

effective relief. Accordingly, the only factor that favors Dooley is the

-13-

inconvenience of defending himself in Montana, but that factor is outweighed by the other six factors which favor jurisdiction in Montana.

Accordingly, this Court has specific personal jurisdiction over Dan Dooley. Dooley's motion to dismiss for lack of personal jurisdiction is denied.

## II.    Count I: Breach of Contract

Dooley next argues that ATTIC's breach of contract claims against him fails as a matter of law because there was never a contract between him and ATTIC. ATTIC contends that Dooley was the actual cause of the breach when he acted as an agent of Gorman Group and Tango Trucking during the restructuring process.

Count I fails as a matter of law because Dooley was not a party to any contract with ATTIC, and therefore may not be held liable for breach of contract. *See Paatalo v. First American Title Co. of Mont., Inc.*, 2014 WL 2002839 (D. Mont. 2014)*; Gruender v. Rosell*, 2010 WL 2079759 (D. Ariz. 2010) ("It would be a novel holding for the [C]ourt to rule that a breach of contract action can be maintained against a person who is not a party to the contract being sued upon") (citation omitted); *see also Credit Gen. Ins. Co. v. Midwest Indemnity Corp.*, 916 F. Supp. 766, 772 (N.D. Ill. 1996). ATTIC's argument that he caused the breach is unavailing because there was no contract between Dooley and ATTIC to begin with.

-14-

Consequently, Count I against Dooley is dismissed.

## III.   Count II: Breach of Fiduciary Duty

The parties also dispute whether there is a valid claim for breach of fiduciary duty.  Dooley argues that no special relationship exists between him and ATTIC.  ATTIC asserts that because a corporation can only act through its officers, a corporation's officer can be individually liable for a corporation's breach of fiduciary duty.

Under Montana law, to determine whether there exists a special relationship between the parties, a court may be required to make a fact-intensive inquiry. *Gliko v. Permann*, 130 P.3d 155, 161 (Mont. 2006).  Whether a special relationship gives rise to a fiduciary duty is a question of law for the court to determine.  *Id.*

Here, ATTIC has pled no facts to suggest that a special relationship may have existed between Dooley and ATTIC.  In fact, the Complaint only alleges that Ralph Nelson had a special relationship with ATTIC. (Doc. 1 at 18–19.)  Further, Dooley's role during the events in question was as the restructuring agent during a specified period of time.

Therefore, the Court finds that there is no plausible breach of fiduciary duty claim against Dooley.  Count II against Dooley is dismissed.

-15-

## IV.    Counts III–V: Fraud Claims

Next, Dooley contends that ATTIC's fraud claims—Count III: Negligent

Misrepresentation, Count IV: Fraud, and Count V: Constructive Fraud—fail as a

matter of law.  Dooley argues that ATTIC did not adhere to the heightened

pleading standard required for fraud claims and that the Complaint does not

adequately allege the the "who, what, when, where, and how of the alleged fraud."

(Doc. 5 at 19.)

Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud

or mistake."  Fed. R. Civ. P. 9(b).  Under Rule 9(b), "the circumstances

constituting the alleged fraud must be specific enough to give defendants notice of

the particular misconduct . . . so that they can defend against the charge and not

just deny that they have done anything wrong."  *Kearns v. Ford Motor Co.*, 567

F.3d 1120, 1124 (9th Cir.2009) (internal quotations omitted).  The degree of

particularity required depends upon the amount of access a plaintiff has to specific

facts.  *Novak v. Anaconda Sch. Dist., Sch. Dist. No. 10, Deer Lodge Cty.*, No. CV

10-62-BU-RFC-CSO, 2011 WL 2489760, at \*7 (D. Mont. May 5, 2011) (citing

*Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 999 (9th Cir.2010) (requirements can

be relaxed where evidence is exclusively within defendant's possession)).

"Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Id.* (citing *Kearns*, 567 F.3d at 1125.) Even though there is a higher degree of notice under Rule 9, it does not abrogate the Rule 8 notice pleading standard—the two rules must be read together. *See U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185–86 (5th Cir.2009). Further, with respect to a motion to dismiss under Rule 12(b)(6), a defendant retains the burden of proving that plaintiff has failed to state a fraud claim. *Novak*, 2011 WL 2489760, at *7–8.

## A.    Count III: Negligent Misrepresentation

The following elements must be established to support a claim for negligent misrepresentation:

(1) the defendant made a representation as to a past or existing material fact;

(2) the representation must have been untrue;

(3) regardless of its actual belief, the defendant must have made the; representation without any reasonable ground for believing it to be

-17-

true;

(4) the representation must have been made with the intent to induce the plaintiff to rely on it;

(5) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying on the representation;

(6) the plaintiff, as a result if his or her reliance, sustained damage.

*Deichl v. Savage*, 216 P.3d 749, 753 (Mont. 2009) (citations omitted).

Here, the Court finds that ATTIC has pled with particularity that Dooley allegedly committed negligent misrepresentation. At first glance, the "who" referred to in the Complaint is Defendant Nelson. (Doc. 1 at 20-21.) However, the Complaint also states that "Defendant Nelson acted as an agent of and in concert or in furtherance of a civil conspiracy with the Ownership Group and/or Dooley." (*Id.* at 20.) This notifies Dooley of his participation in the alleged negligent misrepresentation. The "what" is properly stated by ATTIC in the Complaint as "representations to ATTIC that claims against Tango Transport and TMT were properly reserved and were being properly investigated and paid." (*Id.*) The "when" identified by ATTIC is sufficiently pled as the time period from when the Insureds made representations to ATTIC that the claims were being properly handled to when ATTIC took over the Insureds claims and discovered

-18-

that they failed to do so. (*Id.*) At the time ATTIC became aware of the mishandled claims—around August or September 2015—Dooley was working as the Insured's restructuring agent. ATTIC's Complaint is also clear "where" the harm occurred. ATTIC stated that it is domiciled in Montana and all harm suffered was felt by the company in Montana. (Doc. 1 at 2, 21.) Finally, ATTIC explains "how" the alleged negligent misrepresentation occurred: when it took over the handling of the Insured's claim files it became clear that the Insureds were misrepresenting their liabilities and exposure. (*Id.* at 21.)

Consequently, ATTIC's Complaint alleges sufficient facts to state a claim for negligent misrepresentation against Dooley that is plausible on its face. Under Rule 9, ATTIC has pled all facts it can at this point in the litigation and allowing further discovery is warranted. Thus, Dooley's motion to dismiss Count III is denied.

## B. Count IV: Fraud

In Montana, a party must particularly plead the following nine elements to properly state a fraud claim:

(1) a representation;

(2) the falsity of that representation;

(3) the materiality of that representation;

-19-

(4) the speaker's knowledge of the representations falsity or ignorance of its truth;

(5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated;

(6) the hearer's ignorance of the representation's falsity;

(7) the hearer's reliance upon the truth of the representation;

(8) the hearer's right to rely upon the representation; and

(9) the hearer's consequent and proximate injury or damages caused by their reliance on the representation.

*Id.* (citing *In re Estate of Kindsfather*, 108 P.3d 487, 490 (Mont.2005)).

Here, ATTIC sufficiently pled a fraud claim to survive a motion to dismiss. Count IV states that the "Defendants" collectively committed fraud, which satisfies the "who" requirement. (Doc. 1 at 21–25.) The "what" and "how" is also identified by ATTIC as the fraudulent concealment of the claims being handled incorrectly and that concealment was material to ATTIC's insurance business practices. ATTIC contends that it relied on the Defendants' representations to their detriment, and that ATTIC suffered a damages as a result. (*Id.*) Although the intent element is not specifically pled, ATTIC explained that Dooley had knowledge of the claims handling process. (*Id.*) ATTIC explained how Dooley was involved in the fraud through his role as a restructuring agent and his

-20-

relationship with the other corporate officers of Gorman Group and Tango Transport. The motion to dismiss stage is not appropriate to determine whether fraudulent intent exists here. The Court finds that further discovery is necessary in regards to this element. Finally, the "where" is satisfied because the Complaint states that the harm occurred in Montana. There is also no ambiguity in the Complaint that Dooley's fraudulent acts were allegedly committed during the restructuring process.

Therefore, ATTIC has pled with particularity the elements of fraud against Dooley. The motion to dismiss Count IV is denied.

### C.    Count V: Constructive Fraud

Constructive fraud consists of:

(1)    any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person; or

(2)    any act or omission that the law especially declares to be fraudulent, without respect to actual fraud.

Mont. Code Ann. § 28–2–406. "The presence of a legal duty is an essential element of a claim for constructive fraud" and the existence of such a duty "is a question of law for the court's determination." *Harris v. St. Vincent Healthcare,* 305 P.3d 852, 858 (Mont. 2013).

-21-

ATTIC's Complaint names all Defendants in its constructive fraud claim, including Dooley. (Doc. 1 at 25.)  ATTIC further claims that all Defendants "had a duty to convey complete and accurate information to ATTIC commensurate with their obligations under the Shareholders Agreement, Bylaws of ATTIC" and that they breached their duties when they "misled ATTIC as to the total exposure for outstanding Tango Transport claims and as to the total risk for subsequent potential bad faith claims in the handling of underlying Tango Transport claims." (Doc. 1 at 25–26.)  ATTIC contends that the Defendants' actions and inactions led ATTIC to assume the liabilities of the outstanding claims and that "Tango Transport and Gorman Group were relieved of the obligation to satisfy nearly $10.3 million in potential open claims and in closed but unpaid claims." (*Id.* at 26.)  ATTIC further alleges that by failing to disclose such information, ATTIC was misled by the Defendants, including Dooley, as to "the total exposure for outstanding Tango Transport claims and as to the total risk for subsequent potential bad faith claims in the handling of underlying Tango Transport claims." (*Id.*)  ATTIC's allegations satisfy the "who," "what," "when," "where," and "how" of the heightened pleading standard necessary to survive a motion to dismiss on a constructive fraud claim.

Thus, Dooley's motion to dismiss Count V is denied.

## V.      Negligence Claims

A cause of action for negligence requires that a plaintiff plead four essential elements:

(1) the defendant owed the plaintiff a legal duty;

(2) the defendant breached that duty;

(3) the breach was the actual and proximate cause of an injury to the plaintiff; and

(4) resulting damages.

*Peterson v. Eichhorn*, 189 P.3d 615, 621 (Mont. 2008). The existence of a legal duty is a question of law to be determined by the court. *Fisher v. Swift Transp. Co.*, 181 P.3d 601, 607 (Mont. 2008). "In analyzing whether a duty exists, [courts] consider whether the imposition of that duty comports with public policy, and whether the defendant could have foreseen that his conduct could have resulted in an injury to the plaintiff." *Id.*

Dooley contends that he owed no legal duty to ATTIC and that ATTIC failed to allege any specific duty in its Complaint. However, ATTIC alleges that the "Defendants had a duty to convey complete and accurate information to ATTIC commensurate with their obligations under the Shareholders Agreement, Bylaws of ATTIC, the policies of insurance issued to the insureds, the ATTIC

Claims Handling Protocol and the course of dealing between the parties." (Doc. 1

at 27.) ATTIC further alleges that by failing to properly investigate and handle

claims, the Defendants caused damage to ATTIC. (Doc. 1 at 27–29.) These facts

satisfy the plausible pleading standard under *Iqbal* for negligence.

Negligence *per se* is a failure to comply with a legal mandate. An allegation

of negligence *per se* must establish:

> (1) that the defendant violated a particular statute; (2) that the statute
> was enacted to protect a specific class of persons; (3) that the plaintiff
> is a member of the class; (4) that the plaintiff's injury is the kind of
> injury that the statute was enacted to prevent; and (5) that the statute
> was intended to regulate members of the defendant's class.

*Spreadbury v. Bitterroot Pub. Library*, No. CV 11-64-M-DWM-JCL, 2011 WL

4708044, at *3 (D. Mont. Oct. 4, 2011) (citing *Doyle v. Clark*, 254 P.3d 570, 576

(Mont.2011)).

ATTIC alleges that the Defendants collectively violated Mont. Code Ann. §

35–1–418(1). (Doc. 1 at at 28.) Mont. Code Ann. § 35–1–418(1) governs general

standards for corporate directors. The Complaint states that Dooley was "at all

times relevant, was the restructuring agent hired by Gorman Group during 2015

and was an officer of Gorman Group during the attempted restructuring of Gorman

Group and Tango Transport." (Doc. 1 at 3.) ATTIC concedes that Dooley was

not a director for any of the implicated entities. (Doc. 15 at 30.) Thus, Dooley

cannot be liable for negligence *per se* under Mont. Code Ann. § 35–1–418(1).

Therefore, Count VI survives, but Count VII is dismissed.

## VI.   Acts in Concert

"Under Montana law, an individual defendant can be held liable for the tortious conduct of another individual if the former 'knows that the other's conduct constitutes a breach of duty and [the former] gives substantial assistance or encouragement to the other so to conduct himself.'" *Howell v. Earl*, No. CV 13-48-BU-DWM-JCL, 2014 WL 2594235, at *20 (D. Mont. May 30, 2014), report and recommendation adopted, No. CV 13-48-BU-DWM-JCL, 2014 WL 2761342 (D. Mont. June 18, 2014) (citing *Sloan v. Fauque*, 784 P.2d 895, 896 (Mont.1989) (quoting Restatement (Second) of Torts § 876)). Thus, "where two or more persons commit tortious acts in concert, all are liable for the tortious acts of anyone." *Id*.

Dooley argues that ATTIC pled a mere recitation of the elements above and that since the acts in concert claim relates to the fraud claims, ATTIC is subject to the heightened pleading standard. Further, Dooley contends that there is no factual support for the conclusory allegations. ATTIC claims that "Dooley's knowledge of the fact that Gorman Group and Tango Transport were under-reserving claims and failing to make payments on settled claims, and his

subsequent failure to disclose the same to ATTIC at the very time his fellow

officers and directors were actively misrepresenting their claims handling

practices constitutes, at a minimum, silence during the commission of a tort,

regardless of whether Dooley actively encouraged or instructed them to withhold

such critical information from ATTIC." (Doc. 15 at 32–33.)

First, the Court has already determined that ATTIC has satisfied the

heightened pleading standard in support of its fraud-based claims.  But, more

importantly here, ATTIC's Complaint is not an unsupported recitation of the

elements of acts in concert.  Instead, the Complaint alleges that the Defendants

were aware of the fraud and misrepresentations, knew that they had a duty to

convey complete and accurate information to ATTIC with respect to their claims

handling process, and that all Defendants acted in concert to conceal the alleged

wrongdoings.  (Doc. 1 at 30–31.)  This may include Dooley's silence, a subject

that ATTIC should be allowed to explore in discovery.  Thus, the Court finds that

ATTIC has pled sufficient facts to make out a prima facie cause of action for

Dooley's alleged acts in concert with the other Defendants.

Consequently, Dooley's motion to dismiss Count VIII is denied.

## VII.   Civil Conspiracy

A claim for civil conspiracy requires the following elements:

(1) two or more persons;

(2) with an object to accomplish;

(3) had a meeting of minds on the object or course of action;

(4) to commit one or more unlawful overt acts; and

(5) damages were the proximate result thereof.

*Boylan v. Van Dyke*, 806 P.2d 1024, 1028 (Mont. 1991).

Again, Dooley contends that ATTIC recites the elements and that the Complaint does not contain sufficient facts to survive a motion to dismiss. The Complaint states that "[d]uring 2015 Defendant Dooley joined together with the Ownership Group and Nelson to further advance the plan previously designed by the Ownership Group and Nelson." (Doc. 1 at 32.) ATTIC further alleges that the plan to deceive ATTIC involved the failure to properly investigate, pay, and handle claims. (*Id.*) ATTIC specifically alleges that the Defendants had a meeting of the minds to improve Gorman Group and Tango Transport's financial position prior to liquidation at the expense and hardship of ATTIC. (*Id.*) This alleged conspiracy caused harm directly to ATTIC because ATTIC had to assume the handling and payment of closed and unreimbursed claims from the Insureds. (*Id.*)

Instead of rehashing the elements of civil conspiracy, ATTIC combines facts with every element to sufficiently plead a plausible claim for civil conspiracy

against Dooley.  Thus, Dooley's motion to dismiss Count IX is denied.

## VIII.  Piercing the Corporate Veil

Finally, Dooley moves to dismiss ATTIC's claim for piercing the corporate veil.  ATTIC agrees that its piercing the corporate veil claim does not apply to Dooley.  (Doc. 15 at 34–35.)  Thus, this claim is dismissed with respect to Dooley.

Accordingly, IT IS ORDERED that Defendant Dooley's Motion to Dismiss (Doc. 4) is GRANTED IN PART and DENIED IN PART.  Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.  Defendant's Motion to Dismiss Counts I, II, VII, and X is GRANTED.  Defendant's Motion to Dismiss Counts III, IV, V, VI, VIII, and IX is DENIED.

DATED this 28th day of July, 2017.

Dana L. Christensen, Chief Judge
United States District Court

-28-