IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| AMERICAN TRUCKING AND TRANSPORTATION INSURANCE COMPANY, a Risk Retention Group, | CV 16–160–M–DLC |
| Plaintiff, | ORDER |
| vs. | |
| RALPH NELSON, ROBERT GORMAN, SR., BOBBY J. GORMAN, DAN DOOLEY, and WESTCHESTER SURPLUS LINES INSURANCE COMPANY, | |
| Defendants. | |

Before the Court is the Defendant Westchester Surplus Lines Insurance

Company's ("Westchester") Motion to Compel Arbitration and to Stay Plaintiff's

Claims against Westchester (Doc. 48), and Defendant Dan Dooley's Motion to File

Amended Answer with Cross-Claims (Docs. 54).   For the reasons below, the

Court denies Westchester's Motion to Compel Arbitration and grants Defendant

Dooley's Motion to File Amended Answer.

# BACKGROUND

Plaintiff American Trucking and Transportation Insurance Company ("ATTIC") is a risk retention group located in Missoula, Montana. ATTIC offers its member insureds certain benefits which are not generally available to insureds purchasing insurance on the open market. In exchange for these benefits, the member insureds are subject to heightened duties to ATTIC and the other member insured shareholders. Gorman Group is a transportation, shipping, and logistics company, and was the holding company for a number of subsidiaries, including Tango Transport. Tango Transport was the principal operating entity for Gorman Group's trucking operations. In 2010, Gorman Group became a shareholder of ATTIC and both Gorman Group and Tango Transport became ATTIC insureds (hereafter collectively referred to as "the Insureds"). As shareholders, the Insureds nominated Ralph Nelson, Gorman Group's Senior Vice President and General Counsel, to be their representative to the ATTIC Board of Directors, and ATTIC required that at least one board meeting be held in the State of Montana.

On October 1, 2010, ATTIC issued policy number ATTTAN110 which provided coverage to the Insureds and other affiliated companies. The policy provided the insureds with commercial trucking, property, and personal injury liability coverage with a $5 million per occurrence policy limit subject to a

$350,000 per occurrence deductible.   Tango Transport managed all obligations to ATTIC on behalf of itself and Gorman Group.   Tango Transport made all premium payments, paid claims, paid defense costs on the claims it handled, and reimbursed ATTIC on the claims it paid.

ATTIC provided coverage and issued annual policies to the Insureds in 2010, 2011, 2012, 2013, and 2014.   From October 1, 2010, through September 30, 2015, Ralph Nelson, acting as the Insureds' claims handling manager, handled the intake, investigation, and resolution of claims in which the Insureds anticipated ultimate exposure would fall below $175,000.   The Complaint alleges that Robert Gorman, Sr., as well as Dan Dooley, as the restructuring agent of Tango Transport, were advised and aware of the status of the claims handling process.

In 2014, Tango Transport began experiencing financial difficulties. However, Ralph Nelson informed ATTIC that the Insureds were refinancing their debt obligations.   By September 2015, the Insureds were unable to meet their financial obligations to ATTIC.   At this time, Dan Dooley advised ATTIC that Tango Transport was either going to sell its operating equipment or would cease operations.

ATTIC immediately took over all open liability claims that were within Tango Transport's deductible under the policies issued by ATTIC, and all other

open but unpaid claims.   ATTIC alleges that once it took over the claims, it became clear that the Insureds had failed to satisfy their obligations under the ATTIC Shareholders Agreement and Bylaws, had misrepresented their liabilities, and were negligent in the manner in which they had handled the claims.

On September 20, 2015, ATTIC and the Insureds agreed to extend the policy for 45 days to allow the Insureds time to transfer their operating equipment to another purchasing entity, Celadon, Inc.   The Insureds paid a flat rate for coverage, and also transferred funds to ATTIC to pay for unpaid claims.   By October 2015, the Insureds had informed ATTIC and their creditors that they planned to liquidate their remaining assets.   In April 2016, Tango Transport filed for Chapter 11 Bankruptcy.

As of December 1, 2016, ATTIC had filed two unsecured claims in the consolidated bankruptcy case pending in the Federal Bankruptcy Court, Eastern District of Texas, Dallas, *In re Tango Transport, LCL, et al*.   On December 21, 2016, the bankruptcy court determined that ATTIC could proceed against the non-debtors for civil damages.

ATTIC's Complaint alleges ten counts against Dooley: (I) breach of contract; (II) breach of fiduciary duty; (III) negligent misrepresentation; (IV) fraud; (V) constructive fraud; (VI) negligence; (VII) negligence per se; (VII) acts in

concert; (IX) civil conspiracy; and (X) piercing the corporate veil.    (Doc. 1.)

In July 2017, the Court granted in part and denied in part Dan Dooley's Motion to Dismiss.    (Doc. 33.)    The motion was denied with respect to personal jurisdiction, and Counts III, IV, V, VI, VIII, and IX of the Complaint.    Counts I, II, VII, and X were dismissed as to Defendant Dooley.

On July 20, 2017, ATTIC filed its Amended Complaint, which joined Westchester as a Defendant.    (Doc. 32.)    The claims against Westchester arise out of a Directors and Officers Insurance Policy, policy no. G27131712 ("Westchester Policy"), issued by Westchester to Gorman Group.    As a result of Westchester's refusal to defend and indemnify the officers of Gorman Group, including Ralph Nelson, Bobby J. Gorman, and Robert Gorman, Sr. (the "Westchester Insureds"), these same individuals agreed to settle with ATTIC which included a stipulated judgment in favor of ATTIC in the amount of $3,121,758.45, in exchange for a complete release of any and all claims.    In Count XI of the Amended Complaint, ATTIC seeks a judicial declaration of Westchester's obligations under the Westchester Policy, the settlement agreement just described, and a declaration that Westchester is liable for the $3,121,758.45 stipulated judgment.

Westchester now moves to compel arbitration under the Westchester Policy

and Defendant Dooley moves to amend his answer to include cross claims against Westchester.

## LEGAL STANDARD

### I.      Arbitration

The Federal Arbitration Act ("FAA") "embodies a liberal federal policy favoring arbitration" and facilitates private dispute resolution by making arbitration agreements presumptively "valid, irrevocable, and enforceable."   *Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (citing *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013)) (quoting 9 U.S.C. § 2).   Under the FAA, a party to an arbitration agreement may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration.   9 U.S.C. §§ 3–4.   Any ambiguities as to the scope of the arbitration provision must be interpreted in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *see also AT&T Techs. Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986).   The FAA limits a district court to determining, "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."   *Kilgore*, 718 F.3d at 1058 (internal citation and quotation omitted).   If a valid arbitration agreement exists, the district court is required to enforce the

arbitration agreement according to its terms. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

## II.     Amend Answer

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides a liberal amendment policy, instructing that a court should freely give leave to amend "when justice so requires." Under Rule 15(a)(2), "leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Johnson v. Mammoth Recreations*, Inc., 975 F.2d 604, 607 (9th Cir. 1992) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185–87 (9th. Cir. 1987)). However, once a district court enters a scheduling order pursuant to Rule 16, that rule's standards control. *Johnson*, 975 F.2d at 607–08. Therefore, a party seeking to amend a pleading after the date specified in the scheduling order must show "good cause" exists for amendment under Rule 16(b)(4) in addition to satisfying the Rule 15(a)(2) requirements. *Id*. at 608.

## DISCUSSION

## I.     Arbitration

Westchester moves the Court to compel arbitration and stay proceedings, asserting that the Westchester Policy mandates arbitration when either party has

requested it.   ATTIC asserts that Westchester breached its obligations under the

Westchester Policy and waived any right to enforce the arbitration provision.

All of the named individual Defendants tendered the Complaint in this

matter to Westchester for a defense under the Westchester Policy.   (Doc. 32 at

39.)   Westchester denied a defense to the Westchester Insureds because it

believed the Westchester Policy's Creditor exclusion barred coverage.   Thus,

Westchester did not provide a defense under a reservation of rights and did not file

a declaratory judgment action.   As previously explained, after Westchester

refused to provide a defense, Defendants Ralph Nelson, Bobby J. Gorman, and

Robert Gorman, Sr. agreed to settle with ATTIC, provided a stipulated judgment in

the amount of $3,121,758.45, and assigned to ATTIC all of their rights and claims

which they may have against Westchester.   (*Id.* at 40.)   In exchange, ATTIC

signed a covenant not to execute against the settling Defendants, and also agreed to

dismiss its claims against Darrell Gorman and Liz Cannon with prejudice.   (*Id.* at

41.)

The Westchester Policy contains the following Alternative Dispute

Resolution clause:

**J.     ALTERNATIVE DISPUTE RESOLUTION**

The **Insureds** and the **Insurer** shall submit any dispute or controversy

arising out of or relating to this **Policy** or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process described in this subsection.

Either an **Insured** or the **Insurer** may elect the type of ADR process discussed below; provided, however, that the **Insured** shall have the right to reject the choice by the **Insurer** of the type of ADR process at any time prior to its commencement, in which case the choice by the **Insured** of ADR process shall control.

There shall be two choices of ADR process: (1) nonbinding mediation administered by any mediation facility to which the **Insurer** and the **Insured** mutually agree, in which the **Insured** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the then-prevailing commercial mediation rules of the mediation facility; or (2) arbitration submitted to any arbitration facility to which the **Insured** and the **Insurer** mutually agree, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, and insurance issues relevant to the matters in dispute. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the award of the arbitrators shall not include attorneys' fees or other costs. In the event of mediation, either party shall have the right to commence arbitration in accordance with this section; provided, however, that no such arbitration shall be commenced until at least 60 days after the date the mediation shall be deemed concluded or terminated. In all events, each party shall share equally the expenses of the ADR process.

Either ADR process may be commenced in New York, New York or in the state indicated in Item A of the Declarations as the principal address of the **Parent Company**. The **Parent Company** shall act on behalf of each and every Insured in connection with any ADR process under this section.

(Doc. 49-1 at 9–10.)

As a threshold matter, the Court finds that a valid arbitration clause exists. The clause binds the parties to arbitrate any unresolved dispute at the request of either party. (Doc. 3 at 45.) The "controversy" here relates to the terms of the Westchester Policy and whether Westchester is obligated to provide the Insureds a defense and indemnify them for the amount in the stipulated judgment. Having found a valid arbitration clause, the only question remaining is whether the arbitration clause is binding, or whether Westchester's refusal to provide a defense at the outset renders the arbitration provision unenforceable.

Westchester argues that because the arbitration clause is valid, the right to arbitrate under the FAA is not abrogated by Montana law. ATTIC counters that due to Westchester's refusal to offer the Westchester Insureds a defense, Montana law renders the arbitration provision unenforceable. For support, both Westchester and ATTIC rely on the Montana Supreme Court's holding in *Tidyman's Mgmt. Servs. v. Davis*, 330 P.3d 1139 (Mont. 2014) ("*Tidyman's I*"). In *Tidyman's I*, the Court found that an insurer's "duty to defend arises when a complaint against an insured alleges facts which, if proved, would result in coverage." *Id.* (citing *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381 (Mont. 2004). The duty to defend is "independent from and broader than the duty

–10–

to indemnify created by the same insurance contract." *Id*. (quoting *Staples*, 90 P.3d at 385). Thus, "[w]here a complaint alleges facts which represent a risk outside the coverage of the policy but also avers facts which, if proved, represent a risk covered, the insurer is under a duty to defend." *Id*. (citations omitted). And, "[u]nless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Id*. (citing *Staples*, 90 P.3d at 385).

"When a court compares allegations of liability advanced in a complaint with policy language to determine whether the insurer's obligation to defend was 'triggered,' a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated." *Id*. (quoting *Staples*, 90 P.3d at 385). Also, "[p]olicy exclusions must be construed narrowly in recognition of the fundamental protective purpose of an insurance policy and the obligation of the insurer to provide a defense. The insurer must construe factual assertions from the perspective of the insured rather than from its own perspective." *Id*. (quoting *Staples*, 90 P.3d at 385).

Ultimately, if an insurer unjustifiably refuses to provide a defense to an insured, "the insurer is estopped from denying coverage and becomes liable for

defense costs and judgments." *Id*. (quoting *Staples*, 90 P.3d at 386). Thus,

"where an insurer [unjustifiably] refuses to defend its insured, it does so at its

peril." *Id*. (citation omitted). Because of this result, the Montana Supreme

Court has recommended as follows:

> [W]here an insurer believes it is not required to provide a defense
> under the policy, the prudent course of action is to defend the insured
> under a reservation of rights and file a declaratory judgment action to
> discern coverage.

*Id*. (citations omitted).

Pursuant to *Tidyman's I*, Westchester argues that the Creditor's Exclusion in

the Westchester Policy is the kind of "unequivocal" basis for denial of coverage

that an insurer may assert as a ground for properly declining to defend an insured.

(Doc. 49 at 15.) The Westchester Policy Creditor Exclusion states:

### CREDITOR EXCLUSION

> It is agreed that subsection C1 of the Directors & Officers and
> Company Coverage Section is amended by the addition of the
> following:
>
> brought, or maintained by, on behalf of, in the right of, at the direction
> of, at the behest of, or for the benefit of any:
>
>> (i) person
>>
>> (ii) partnership or any of its partners, directors, officers, or
>> employees; or

(iii) corporation, or any of its directors, officer or employees

who is a secured or unsecured creditor of the Company.

(Doc. 49-1 at 40.)    Westchester argues that this exclusion clearly applies because

ATTIC was a creditor in the Tango Transport Chapter 11 Bankruptcy, and thus

coverage under the Westchester Policy was never implicated.    For further support,

Westchester relies on two subsequent Montana Supreme Court cases that clarified

the *Tidyman's I* holding that insurers may decline coverage if the claim

unequivocally falls outside the policy.    *See Beaverhead Cty. v. Montana Ass'n of*

*Ctys. Joint Powers Ins. Auth.*, 335 P.3d 721, 725 (Mont. 2014) (finding that "there

was an 'unequivocal demonstration' that the claims against the [insurer] were not

covered by its insurance policy" and that "[n]o duty to defend was ever triggered,

and [the insurer's] denial of coverage was proper."); *Huckins v. United Servs.*

*Auto. Ass'n*, 396 P.3d 121, 125–26 (Mont. 2017) (concluding that under the

homeowners policy, the Failure to Disclose Exclusion and the facts of the

underlying complaint presented an unequivocal demonstration that the claims did

not fall within the insurance policy's coverage, and USAA had no duty to defend.)

Westchester also argues that ATTIC's amended complaint does not allege that

Westchester was in a position to commence a declaratory judgment action when it

first declined coverage to its insureds.    (Doc. 49 at 16–17.)    Westchester asserts

that under *Tidyman's I*, a declaratory judgment cannot be brought unless there is a definite dispute regarding coverage, and that here the Westchester Policy unequivocally precluded coverage.   In sum, Westchester's argument is premised entirely on the fact that it believes the Westchester Policy provides no coverage due to the Creditor's Exclusion.

ATTIC argues that *Tidyman's I* controls and Westchester's reading of the case is incorrect.   Thus, when Westchester disclaimed coverage for the Westchester Insureds and took no steps to discern its duties to defend or indemnify—by filing a declaratory judgment action—Westchester forfeited its rights to rely on the insurance contract itself and any defenses therein.   (Doc. 58 at 10–11.)   ATTIC argues that the facts here are analogous to those in *Tidyman's I* and that when an insurer believes a policy exclusion precludes coverage, it should defend its insureds under a reservation of rights and file a declaratory action. ATTIC also counters that Westchester's reliance on *Beaverhead County* and *Huckins* is misplaced because the Montana Supreme Court upheld *Tidyman's I* in those cases and, specifically in *Huckins*, found that as to the renter's policy in that case the insurer breached its duty to defend because coverage did exist.   ATTIC contends that because the Complaint includes claims against Westchester's insureds that are not excluded by the Creditor's Exclusion, such as fraud,

misrepresentation, and negligence, that there is still arguably coverage under the Westchester Policy for a majority of the claims and, consequently, Westchester breached its duty to defend by precluding coverage as a whole.

Next, ATTIC argues that because it is not a creditor as contemplated by the Westchester Policy's Creditor Exclusion, there existed a genuine dispute regarding coverage at the outset when the Westchester Insured's asked Westchester to defend them in the lawsuit. Thus, ATTIC argues there is no need for the Court to do a full coverage analysis of whether it is in fact a creditor and whether the exclusion applies because the initial dispute meant that Westchester was required under Montana law to defend the Westchester Insureds and file a declaratory action. Therefore, ATTIC concludes that Westchester is now estopped from relying on the arbitration provision at issue here.

Lastly, in regards to the FAA and the arbitration clause itself, ATTIC argues that that a valid agreement to arbitrate does not exist because ATTIC is not an "Insured" under the terms of the Policy and was merely assigned the rights of the Insureds post-breach of the contract. And, even if ATTIC was an Insured, ATTIC contends that the contract is a contract of adhesion because it was non-negotiable when it was presented to Gorman Group.[1] Thus, compelling

_____

[1] ATTIC filed a notice to the Court on January 11, 2018, in regards to supplemental

–15–

arbitration in New York would be unjust.

After reviewing ATTIC's Complaint against the Insureds, the Court finds that Westchester cannot unequivocally demonstrate that ATTIC's claims against the Westchester Insureds were completely precluded from coverage. The Complaint alleges breach of contract, breach of fiduciary duties, negligent misrepresentation, fraud, constructive fraud, negligence, negligence per se, acts in concert, civil conspiracy, and piercing the corporate veil. (Doc. 1.) The parties do not dispute that some of these claims are covered as occurrences under the Westchester Policy. *See State Farm Fire and Cas. Co. v. Schwan*, 308 P.3d 48, 51 (Mont. 2013) (citations omitted) ("Montana follows what other courts have termed the 'mixed-action' rule, which requires an insurer to defend all counts in a complaint so long as one count potentially triggers coverage, even if the remaining counts would not be covered.") While ATTIC does admit to holding two unsecured claims in the underlying bankruptcy case (Doc. 1 at 15), after a cursory review of the Westchester Policy, the Court cannot unequivocally conclude that

---

authority on this issue. ATTIC contends that if the Court finds that the assignment in this case operates to make ATTIC an "Insured" to the Westchester Policy, that Montana Code Annotated § 27–5-114(2)(c), which prohibits arbitration clauses in agreements that relate to insurance policies or insurance contracts, serves to bar Westchester's demand for arbitration. However, Montana law does not govern this contract dispute because it is preempted by the FAA. *See, e.g.*, *Elk Mountain Motor Sports v. Arctic Cat Sales, Inc.*, No. CV 13-7-H-CCL, 2013 WL 5492960, at *2 (D. Mont. Oct. 1, 2013) ("[T]he Federal Arbitration Act ("FAA") governs this dispute because it involves a transaction implicating interstate commerce.")

ATTIC qualifies as a "Creditor" under the Westchester Policy.   In fact, the parties

dispute the definition of "Creditor" under the policy, establishing that there was a

dispute regarding coverage at the outset of this case when the Westchester Insureds

asked Westchester to provide them with a defense.   (*See* Docs. 58 at 19–27; Doc.

61 at 5–10.)

However, at this point in the litigation, it is not necessary for the Court to

make a determination regarding coverage and whether the exclusion applies.

What is mandated by *Tidyman's I* under the facts of this case is that Westchester

should have initially offered a defense to its Insureds under a reservation of rights

and then filed a declaratory judgment action regarding coverage.   Because

Westchester failed to provide a defense, Montana law is clear that Westchester has

lost its right to invoke insurance contract defenses, including the right to arbitrate.

*Indep. Milk & Cream Co. v. Aetna Life Ins. Co.*, 216 P. 1109, 1110 (Mont. 1923);

*State Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 413 (Mont. 2013);

*Tidyman's I*, 330 P.3d at 1149 (citing Staples, 90 P.3d at 387) ("It is well-

established that where an insurer refuses to defend a claim and does so

unjustifiably, the insurer is estopped from denying coverage and becomes liable for

defense costs and judgments.");   *Tidyman's Mgmt. Servs. Inc. v. Nat'l Union Fire

Ins. Co. of Pittsburgh, PA*, 378 P.3d 1182, 1186 (Mont. 2016).   Therefore,

Westchester cannot now claim that the arbitration clause is mandatory under the terms the Westchester Policy after it breached its duty to defend. The Court need not analyze the parties' additional arguments and concludes that the arbitration clause is unenforceable.

## II.    Amend Answer

Because the Court has found that Westchester breached its duty to defend and that the arbitration clause is unenforceable, the Court will also allow Defendant Dooley to amend his answer. Dooley moves for leave to file an amended answer and include cross claims against Westchester to determine its obligations to defend and indemnify Dooley. That is the same issue that ATTIC is currently litigating in Count XI of its Amended Complaint. Westchester will not be unduly prejudiced because it has yet to answer ATTIC's Amended Complaint and no preliminary pretrial conference has been held. Further, these claims come as no surprise to Westchester as it has already litigated this issue in regards to its own motion to compel arbitration. While Westchester contends that Defendant Dooley's cross claims are futile because the alleged claims are subject to mandatory arbitration, the Court has already resolved the issue of arbitration above and found that the arbitration clause is unenforceable due to Westchester's failure to provide a defense to the Westchester Insureds at the outset of this

litigation.

Under Rule 15(a)(2), the Court concludes that Defendant Dooley's proposed amendment to his answer is not prejudicial, futile, nor does it create undue delay. Judicial economy is best served by ATTIC and Defendant Dooley litigating this issue before the Court at the same time. Therefore, Defendant Dooley's Motion to File Amended Answer is granted.

Accordingly, IT IS ORDERED that Westchester's Motion to Compel Arbitration is (Doc. 48) is DENIED, and Defendant Dooley's Motion to File Amended Answer (Doc. 54) is GRANTED.

IT IS FURTHER ORDERED that pursuant to the Court's Order dated September 26, 2017 (Doc. 59), ATTIC and Defendant Dooley have 30 days from the date of this Order to file their opposition to Defendant Westchester's Motion Pursuant to Fed. R. Civ. P 12(B)(6) to Dismiss Plaintiffs Claims Against Westchester (Doc. 51).

DATED this 20th day of April, 2018.

Dana L. Christensen, Chief District Judge
United States District Court